FILED

'11 JUN 10 PM 3: 16

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ 

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMAND SAROLI, an individual,<br><br>Plaintiff,<br>vs.<br><br>AGUA CALIENTE BAND OF CAHUILLA INDIANS, and DOES 1 to 50,<br><br>Defendant. | Case No. 10-CV-1748-BEN (NLS)<br><br>**ORDER (1) GRANTING MOTION FOR RECONSIDERATION; AND (2) DISMISSING COMPLAINT WITH LEAVE TO AMEND**<br><br>[Docket No. 12] |

Defendant Agua Caliente Band of Cahuilla Indians moves for reconsideration of the Court's November 15, 2010 order (Docket No. 11) granting in part and denying in part Defendant's motion to dismiss for lack of jurisdiction. For the reasons set forth below, Defendant's motion for reconsideration is **GRANTED**, and this action is **DISMISSED WITHOUT PREJUDICE**. Plaintiff shall have *until and including June 24, 2011* to file an amended complaint.

## I.    BACKGROUND

Armand Saroli, a California resident, filed suit against the Agua Caliente Band of Cahuilla Indians for alleged injuries arising out of his stay at Defendant's casino and hotel. (Compl. [Docket No. 1], ¶ 7.) Specifically, Plaintiff alleges that a water spout in his hotel bathtub broke off and struck him in the face, knocking him backwards. (*Id.*) Plaintiff asserts claims for premises

1   liability, negligence, and negligent hiring, training, supervision, and retention of hotel employees.

2   (*Id.* ¶¶ 12–44).

3        On September 21, 2010, Defendant filed a motion to dismiss for lack of jurisdiction.

4   Defendant argued that, as a federally-recognized Indian tribe, Defendant has sovereign immunity

5   from civil suit in both state and federal courts. (Mot. Dismiss, at 3.)  Plaintiff opposed the motion,

6   arguing that Defendant subjected itself to arbitration and waived its right to assert sovereign

7   immunity in connection with litigation to enforce the obligation to arbitrate.  In support, Plaintiff

8   cited a compact that Defendant signed with the State of California.  According to the terms of the

9   compact, in return for the right to host gaming on Defendant's tribal lands, Defendant consented to

10   arbitration for,

11         all claims arising out of, connected with, or relating to the
      operation of the Gaming Facility or the Gaming Activities,

12         including, but not limited to, injuries resulting from entry onto
      the Tribe's land for purposes of patronizing the Gaming Facility

13         ... [and, further,] *waive[s] its right to assert its sovereign*
      *immunity in connection with the arbitrator's jurisdiction and*

14         *in any action brought in federal court or, if the federal court*
      *declines to hear the action, in any action brought in the courts*

15         *of the State of California that are located in Riverside County*,
      including courts of appeal, to ... *enforce the parties' obligation*

16         *to arbitrate.*

17   (Pl.'s Opp'n to Def.'s Mot. Dismiss [Docket No. 5] at 4–5 [citing First Amendment to the Tribal-

18   State Compact between the State of Cal. and the Agua Caliente Band of Cahuilla Indians, Sept. 10,

19   1999].)  Put another way, Plaintiff urged that this litigation aims to enforce Defendant's obligation

20   to arbitrate and that—in this limited context—Defendant expressly waived sovereign immunity.

21        The Court agreed.  In an order signed November 15, 2010, this Court construed Plaintiff's

22   Complaint as including a demand to compel arbitration and held that Plaintiff properly invoked

23   federal diversity subject matter jurisdiction for purposes of enforcing Defendant's arbitration

24   obligation. (Order of November 15, 2010 [Docket No. 11] at 3–4.)  However, the Court dismissed

25   Plaintiff's claims for premises liability, negligence, and negligent hiring, training, supervision, and

26   retention. (*Id.* at 4.)

27        On November 30, 2010, Defendant filed the Motion currently before the Court.  (Docket

28   No. 12.)  Defendant contends this lawsuit does not qualify for diversity subject matter jurisdiction

1   and, therefore, should be dismissed.

2   **II.     DISCUSSION**

3       **A.   Motion for Reconsideration**

4       Although the Federal Rules of Civil Procedure do not expressly authorize a motion for

5   reconsideration, the Court "has the inherent power to reconsider and modify its interlocutory orders

6   prior to the entry of judgment." *Smith v. Massachusetts,* 543 U.S. 462, 475 (2005). This inherent

7   power extends to prior rulings in the same litigation. *Lahiri v. Universal Music & Video Distrib.*

8   *Corp.,* 606 F.3d 1216, 1222 (9th Cir. 2010) ("a court may revisit prior decisions in a case and

9   correct errors while the case is still pending"). On this same note, the Court has a duty to ensure its

10  own subject matter jurisdiction, regardless of whether a party contests thereto. Fed. R. Civ. P.

11  12(h)(3); *United Investors Life Ins. Co. v. Waddell & Reed Inc.*, 360 F.3d 960, 967 (9th Cir. 2004).

12      There are generally two types of subject matter jurisdiction: federal question jurisdiction

13  under 28 U.S.C. § 1331, and diversity jurisdiction under 28 U.S.C. § 1332. Because the Complaint

14  does not presently include a cause of action "arising under the Constitution, laws, or treaties of the

15  United States," the Court finds that federal question jurisdiction under Section 1331 does not exist.

16  The question, therefore, is whether diversity jurisdiction under 28 U.S.C. § 1332 exists.

17      Section 1332 provides that diversity jurisdiction exists where the amount in controversy

18  exceeds $75,000 and where the parties are,

19          (1) citizens of different States;
            (2) citizens of a State and citizens or subjects of a foreign state;
20          (3) citizens of different States and in which citizens or subjects of a
            foreign state are additional parties; and
21          (4) a foreign state, defined in section 1603(a) of this title, as plaintiff
            and citizens of a State or of different States.
22

23  28 U.S.C. § 1332(a).   A Court may look to the damages alleged in a Complaint to determine the

24  amount-in-controversy. *St. Paul Mercury Indemn. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)

25  (the amount in controversy is determined from the allegations or prayer of the complaint). Here,

26  however, Plaintiff does not allege an amount for damages. In his opposition to Defendant's motion

27  to dismiss, Plaintiff includes a settlement demand to Defendant in an amount lower than $75,000,

28  but also includes an Incident Claim Form to Defendant for an amount exceeding $75,000. (Klein

- 3 -                                                                          10cv1748

1   Decl. [Docket No. 5], Exs. 2, 4.)  The amount set forth in the settlement demand is itemized;

2   whereas, the amount set forth in the claim form is not and does not include any further detail that

3   would enable this Court to determine that the amount-in-controversy exceeds $75,000.  Although

4   Plaintiff need only establish a "good faith" expectation of recovering at least the minimum

5   jurisdictional amount, the Court finds that Plaintiff has failed to satisfy even that requirement.

6   Therefore, the Court finds Plaintiff has not met the amount-in-controversy requirement for

7   diversity jurisdiction.

8          Even assuming this requirement is satisfied, an issue remains regarding whether Plaintiff

9   can satisfy the citizenship requirement for diversity.  An individual such as Plaintiff is considered a

10  citizen of his or her state of domicile, which is determined at the time the lawsuit is filed.  *Lew v.*

11  *Moss*, 797 F.2d 747, 750 (9th Cir. 1986).  "A person is 'domiciled' in a location where he or she

12  has established a fixed habitation or abode of a particular place, and [intends] to remain there

13  permanently and/or indefinitely."  *Id.* at 749-50.  Plaintiff alleges that, at all relevant times herein,

14  Plaintiff resided in California.  (Compl., ¶ 1.)  Residency alone, however, is not sufficient to show

15  an intent to remain; only domicile is determinative.  *Kanter v. Warner-Lambert Co.*, 265 F.3d 853,

16  857 (9th Cir. 2001).  As Plaintiff has not produced competent evidence establishing his permanent

17  home or intent, the Court finds Plaintiff has not sufficiently alleged his citizenship for

18  jurisdictional purposes.

19         As for Defendant, it is well-established that federally-recognized Indian tribes are not

20  citizens of any State.  *Am. Vantage Co., Inc. v. Table Mountain Rancheria*, 292 F.3d 1091, 1095-

21  98 (9th Cir. 2002).  In its November 15, 2010 order, however, the Court found that Defendant was

22  a "foreign state" and, therefore, subject to suit in this Court.  This conclusion was based on the

23  parties' arguments and case law cited in support thereof.  After now conducting its own research,

24  the Court finds that Defendant is not a foreign state and, thus, modifies its November 15, 2010

25  order accordingly.

26         The Ninth Circuit has not addressed whether an Indian tribe is a "foreign state" for purposes

27  of Section 1332(a)(2).  *American Vantage*, which found that Indian tribes are not citizens of any

28  State, was expressly limited to Section 1332(a)(1) and therefore does not apply to this case, as

1    previously recognized in the Court's November 15, 2010 order. *Am. Vantage*, 292 F.3d at 1095-98.

2           Other circuits, however, have analyzed this issue and have found that Indian tribes are not

3    "foreign states" for purposes of Section 1332(a)(2). *See, e.g., Gaming World Int'l v. White Earth*

4    *Band of Chippewa Indians*, 317 F.3d 840, 847 (8th Cir. 2003) ("Diversity jurisdiction is not

5    available here under 28 U.S.C. § 1332 because Indian tribes are neither foreign states nor citizens of

6    any state.") (internal citations omitted); *Romanella v. Hayward*, 933 F.Supp. 163, 166-67 (D. Conn.

7    1996), *aff'd* 114 F.3d 15 (2nd Cir. 1997). Although this Court is not bound by those decisions, the

8    Court finds the decisions instructive and useful, especially in light of the policy favoring uniformity

9    in federal law. *James v. Sunrise Hosp.*, 86 F.3d 885, 889 (9th Cir. 1996) ("there is virtue in

10   uniformity of federal law as construed by the federal circuits."). Additionally, the Court notes that

11   those other decisions rely on the Supreme Court's decision in *Cherokee Nation v. State of Georgia*,

12   30 U.S. 1 (1831) (Marshall, C.J.). The *Cherokee* decision held that Indian tribes are "domestic

13   dependent nations" and, thus, not "foreign states." *Cherokee*, 30 U.S. at 17-18. Although the

14   *Cherokee* decision is an early Supreme Court decision, the Ninth Circuit has relied on it relatively

15   recently for jurisdiction purposes, albeit in an unpublished opinion and in the context of 28 U.S.C. §

16   1330. *See Navarro v. Eagle Mountain Casino*, 183 Fed. Appx. 659, 661 (9th Cir. 2006) (finding

17   that the tribe in that case was not a "foreign state" for purposes of jurisdiction under Section 1330).

18   Accordingly, the Court follows the prevailing authority on this point and finds that Defendant is not

19   a "foreign state" for purposes of diversity under Section 1332(a)(2). As Defendant is also not a

20   citizen of any State, the Court finds that no other subsection of Section 1332 affords diversity

21   jurisdiction in this case.

22          The Court notes, however, there may be instances in which diversity jurisdiction exists for

23   an Indian Tribe. In *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d

24   1221 (9th Cir. 1989), the Ninth Circuit recognized that diversity jurisdiction may exist as to an

25   incorporated tribal entity because such entity, unlike an unincorporated tribal entity, is deemed a

26   citizen of the State in whose borders the Indian reservation is located. *Stock West, Inc. v.*

27   *Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1226 (9th Cir. 1989); *see also Am.*

28   *Vantage*, 292 F.2d at 1059. Other circuits have also recognized this distinction for incorporated

1  tribal entities. *See, e.g., Gaines v. Ski Apache*, 8 F.3d 726, 729 (10th Cir. 1993) (holding that while

2  a corporate tribal entity may be subject to diversity jurisdiction, a constitutional tribal entity could

3  not). Here, Plaintiff alleges Defendant is a "federally recognized sovereign Indian tribe." (Compl.,

4  ¶ 2.)  Plaintiff does not allege, and the record at this stage of the case does not show, that Defendant

5  is an incorporated tribal entity.

6        Taking all of these factors together, the Court finds good cause exists to modify its

7  November 15, 2010 order to find that it lacks subject matter jurisdiction over the claims in this case.

8      **B.**    **Leave to Amend**

9        In his opposition to Defendant's motion to dismiss, Plaintiff requested leave to amend his

10  Complaint in the event the Court granted dismissal.  Plaintiff renewed that request in his opposition

11  to the current Motion.

12        Federal Rule of Civil Procedure 15 provides that the Court "should freely give leave [to

13  amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).  "This policy is 'to be applied with

14  extreme liberality.'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003)

15  (quoting *Owens v. Kaiser Found. Health Plan, Inc,* 244 F.3d 708, 712 (9th Cir. 2001)).  Courts

16  consider "undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, and futility

17  of the proposed amendment" in deciding whether justice requires granting leave to amend under

18  Rule 15. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989).

19        Here, Plaintiff seeks leave to amend the Complaint in order to add allegations and/or claims

20  that would support jurisdiction in this Court.  Plaintiff initially requested leave to amend when he

21  filed his opposition to Defendant's motion to dismiss.  This case is also in its early stages and, in

22  fact, no trial date or pretrial conference has been scheduled.  Accordingly, the Court finds

23  Defendant will have sufficient time to address any new allegations or claims in an amended

24  Complaint and there is no evidence of undue delay, bad faith, dilatory motive or undue prejudice.

25  Additionally, there is insufficient evidence in the record at this time that shows the proposed

26  amendments would be futile.

27        In light of the above, the Court grants Plaintiff's request for leave to file an amended

28  complaint.

III.   **CONCLUSION**

For the reasons set forth above, Defendant's motion for reconsideration is **GRANTED**, and this action is **DISMISSED WITHOUT PREJUDICE**.  Plaintiff shall have *until and including June 24, 2011* to file an amended complaint.

**IT IS SO ORDERED**.

Date: June /0 , 2011

Hon. Roger T. Benitez
United States District Court Judge